UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| ROSEMARIE T. WALKER | : | |
| Debtor | : | Bankruptcy No. 06-10494 |
| _____ | | |
| ROSEMARIE T. WALKER | : | |
| Plaintiff | : | |
| v. | : | |
| DELAWARE COUNTY TAX CLAIM BUREAU, THOMAS A. McFADDEN and ALBERT MARTIN | : | |
| Defendants | : | Adversary No. 06-0135 |
| _____ | | |

............................................................

MEMORANDUM

............................................................

Messrs. Thomas A. McFadden and Albert Martin have two related motions pending before me.  First, they seek to dismiss this chapter 13 bankruptcy case as filed in bad faith.  In the alternative, they seek to dismiss an adversary proceeding pending against them for failure to state a cause of action, or via abstention.  The debtor opposes all relief, arguing that her chapter 13 petition was filed in good faith, that she has stated a cause of action in her complaint, and that abstention is not warranted.

An evidentiary hearing was held, which revealed that very few material facts were in dispute.

I.

The instant chapter 13 bankruptcy case is the debtor's fifth bankruptcy filing since 1999. The first case was filed on September 8, 1999 and was dismissed upon motion of the chapter 13 trustee on November 7, 2001. Ex. M-1. The second petition was filed on September 5, 2001 and was dismissed upon motion of the bankruptcy trustee on April 6, 2002. Ex. M-2. Ms. Walker's third chapter 13 petition was filed on September 4, 2002 and was quickly dismissed at the trustee's request on December 10, 2002. Ex. M-3. The fourth petition was filed on September 12, 2003 and was also dismissed, at the trustee's insistence, on December 2, 2003. Ex. M-4.

It is no coincidence that all four bankruptcy cases were filed in early September. The debtor acknowledged that each of these filings was intended to prevent the tax sale of her home, located at 600 West Springfield Road, Springfield, Pennsylvania. Apparently, she became delinquent in paying local real estate taxes, and the Delaware County Tax Claim Bureau began scheduling tax upset sales of her home in 1999. Such tax sales occur in Delaware County only in September. And the debtor timed the filing of all four petitions a few days prior to the scheduled sale that year.

The debtor intended that her bankruptcy filings would stay the scheduled tax sales, pursuant to 11 U.S.C. § 362(a). And the first three filings did result in the cancellation by the county of the forced sale. The fourth filing on September 12, 2003, however, did not prevent the sale. The parties dispute whether notice was given to the Tax Claim Bureau of the debtor's 2003 bankruptcy filing prior to the scheduled sale. In any event, the debtor's Springfield Road realty was sold at tax sale to defendants

2

McFadden and Martin at open auction for $113,000. This amount exceeded the debtor's tax obligation to the county, which the debtor estimated at about $46,000.

On February 18, 2004, the Tax Claim Bureau, which had received full payment of the delinquent taxes, issued a deed for the Springfield Road property to Messrs. McFadden and Martin. Ex. M-10. Thus, since February 2004, these defendants have been the record owners of the realty. Nonetheless, the debtor did not vacate the property; indeed she currently remains in possession.

The debtor claims that she first learned of the tax sale after the February 2004 deed was issued. At some point shortly thereafter, the new owners communicated with her and she responded that the post-bankruptcy tax sale was invalid, due to the imposition of the bankruptcy stay. The defendants then took the position that the sale was legitimate. However neither party took any action to resolve their ownership dispute for about one year.

In March 2005, Messrs. McFadden and Martin filed a motion in this bankruptcy court seeking to retroactively terminate the bankruptcy stay and validate the September 2003 tax sale. In response to that pleading, the debtor filed a complaint in this court seeking to invalidate the tax sale under section 362.

Of course, both the defendants' motion and the debtor's complaint were filed in this court more than one year after the debtor's fourth bankruptcy case had been dismissed. Without any pending bankruptcy case, it was impossible to meet the bankruptcy court's jurisdictional predicate established by 28 U.S.C. § 1334—that the outcome of any dispute conceivably affects the administration of the bankruptcy case. See, e.g., In re Valdez Fisheries Development Association, Inc., 439 F.3d 545 (9th Cir.

3

2006); see generally In re Resorts International, Inc., 372 F.3d 154, 163-64 (3d Cir. 2004). Thus, I considered Messrs. Martin and McFadden's motion to annul the bankruptcy stay as an implicit request to first vacate the dismissal order and then provide the requested relief. Only if the dismissal were vacated would there be any subject matter jurisdiction to resolve the parties' dispute over the 2003 tax sale.

By memorandum and order dated May 31, 2005, I determined that the facts justified denial of any request to vacate the dismissal order entered in December 2003, and so dismissed both the motion to annul the stay and the debtor's complaint to invalidate the sale. I summarized my reasons for so concluding as follows:

> Accordingly, given the absence of any pending bankruptcy case, given the parties' lengthy delay in seeking relief in this forum, given that the movants acknowledge their need for subsequent relief in state court, and given the ability of the state court to address the parties' respective legal and factual assertions involving the validity of the tax sale, the better exercise of discretion is not to reconsider the order dismissing this case. As there is no pending bankruptcy case before me, the instant motion for relief under section 362(d)(1) must be dismissed for lack of subject matter jurisdiction.

Memorandum Decision, at 23 (May 31, 2005).

In the course of my May 2005 decision, I explained to the parties that the Pennsylvania state courts, in the context of an ejectment action, could determine whether the February 2004 deed was valid. Furthermore, I noted that as Messrs. McFadden and Martin were never creditors of the debtor, the validity of their deed depended upon 11

4

U.S.C. § 549.[1]  See, e.g., In re Paxton, 440 F.3d 233, 236 (5th Cir. 2006); see generally In

---

[1]This section provides:

a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–

    (1) that occurs after the commencement of the case; and

    (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

    (B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

(d) An action or proceeding under this section may not be commenced after the earlier of–

    (1) two years after the date of the transfer sought to

(continued...)

re Kingsley, 208 B.R. 918 (B.A.P. 8th Cir. 1997); In re Fanaras, 263 B.R. 655, 663 (Bankr. D. Mass. 2001). Disputes concerning section 549 are not exclusively within the jurisdiction of a bankruptcy court and so can be determined in state courts of general jurisdiction. See Oles v. Curl, 65 S.W. 3d 129 (Ct. App. Tex. 2001); Tim Wargo & Sons, Inc. v. Equitable Life Assurance Society, 34 Ark. App. 216 (1991); Haggerty v. Erie County Tax Claim Bureau, 107 Pa. Cmwlth. 265 (1987), appeal denied, 518 Pa. 644 (1988).[2]

After entry of my May 2005 decision dismissing their motion for lack of jurisdiction, Messrs. McFadden and Martin filed an ejectment action against the debtor in state court, where it is pending. On February 7, 2006, the debtor filed the instant fifth chapter 13 case, seeking to stay the state court ejectment action against her. And on February 14, 2006, she filed the above-captioned adversary proceeding seeking to

---

[1](...continued)
   be avoided; or

   (2) the time the case is closed or dismissed.

Although section 549(a) empowers only a trustee to avoid a postpetition transfer, by virtue of section 522(h) the debtor is granted the trustee's avoiding powers under section 549(a) if certain conditions are met. See, e.g., In re Purnell, 92 B.R. 625, 628 (Bankr. E.D. Pa. 1988); In re Mann, 22 B.R. 306, 309 n.11 (Bankr. E.D. Pa. 1982).

[2]In the May 2005 memorandum decision, I discussed at length the power of a non-bankruptcy forum to adjudicate issues under section 549, as well as issues related to the scope of the bankruptcy stay. As I write this memorandum for the benefit of the parties only, and as the parties are represented by the same attorneys as in May 2005, I shall not repeat that earlier analysis.

6

invalidate the September 2003 sale as having occurred in violation of the bankruptcy stay.[3]

The debtor also filed a proposed chapter 13 plan in this case. Ex. M-7. She has recently received a bequest of about $22,000 from a relative, plus a small annuity; and her plan calls for her to pay that lump sum to the chapter 13 trustee. In addition, her proposed plan requires her to pay to the trustee $200 per month for 12 months and $750 per month for another 48 months. Id.

The plan directs the trustee to distribute these funds to the Delaware County Tax Claim Bureau, but only if the debtor is successful in invalidating the tax sale and recovering title to her former realty. Id. If she is not successful, the trustee would have no other creditor to whom he would make distribution. Indeed, the debtor acknowledged at the hearing that the only creditor listed on her bankruptcy schedules is the Delaware County Tax Claim Bureau.

Of course, at the present time, the Tax Claim Bureau is not her creditor: the debtor's real estate tax obligation was repaid in full in September 2003, and she has not incurred any tax liability since that date as she is no longer the record owner of that property.

---

[3] In all material respects, this complaint is the same as the one filed by the debtor in April 2005, in response to the defendants' prior annulment motion.

II.

I turn first to consider whether this bankruptcy case should be dismissed. If I dismiss it as filed in bad faith, I believe it would be inappropriate to retain jurisdiction over the debtor's adversary proceeding. See In re Myers, 334 B.R. 136, 145-46 (E.D. Pa. 2005); In re Burrell, 186 B.R. 230, 236 (Bankr. E.D. Tenn. 1995) ("While the policy behind the automatic stay requires courts to be 'especially hesitant to validate acts committed during the pendency of the stay,' . . . sanctioning the IRS will only further the debtor's misuse of the Bankruptcy Code."); see also In re Smith, 866 F.2d 576, 580 (3d Cir. 1989) (dismissal of the bankruptcy case will usually result in the dismissal of pending adversary proceedings).

Section 1307(c) permits a chapter 13 case to be dismissed for cause, and provides some non-exclusive examples. 11 U.S.C. § 1307(c). In In re Lilley, 91 F.3d 491 (3d Cir. 1996), the Third Circuit Court of Appeals held that section 1307(c) must be interpreted as requiring that all chapter 13 cases be filed in good faith:

> It is clear that Chapter 13 contains no explicit good faith requirement. Section 1307(c) provides, however, that Chapter 13 petitions may be dismissed "for cause." 11 U.S.C. § 1307(c). The Seventh, Ninth and Tenth Circuits have held that lack of good faith in filing is sufficient cause for dismissal under section 1307(c). See In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992); In re Eisen, 14 F.3d 469, 470 (9th Cir. 1994); In re Gier, 986 F.2d 1326, 1329-30 (10th Cir. 1993). We agree.

Id. at 496.

When a party seeks to dismiss a chapter 13 case as filed in bad faith, and when the debtor has had prior unsuccessful filings (as in this instance), usually the issue

8

of bad faith is considered in the context of the likelihood of the debtor's ability to reorganize, and whether the latest bankruptcy filing is simply an attempt to forestall a creditor from proceeding in state court.  See, e.g., In re Huerta, 137 B.R. 356, 367 (Bankr. C.D. Cal. 1992).  Moreover, since the debtor was unable to reorganize previously, the question of bad faith often focuses upon whether a material change in the debtor's financial circumstances has occurred.  See, e.g., Matter of Elmwood Development Co., 964 F.2d 508 (5th Cir. 1992); In re Chisum, 847 F.2d 597 (9th Cir.), cert. denied sub nom. Mortgage Mart, Inc. v. Rechnitzer, 488 U.S. 892 (1988); In re Johnson, 708 F.2d 865 (2d Cir. 1983); In re Oglesby, 158 B.R. 602 (E.D. Pa. 1993); In re LeGree, 285 B.R. 615 (Bankr. E.D. Pa. 2002); In re McKissie, 103 B.R. 189, 192 (Bankr. N.D. Ill. 1989).

The debtor couches her opposition to dismissal in these very terms.  She contends that with her present employment and her recent inheritance, she can well afford to fulfill her proposed plan.  Thus, she maintains that there has been a material change in circumstances warranting a finding that her latest reorganization effort was undertaken in good faith.

However, the concept of bad faith in a bankruptcy filing, even when the debtor has filed numerous prior unsuccessful reorganization cases, is not limited to the issue of material change in circumstances.  For example, in In re Lilley, 91 F.3d at 496, the Court of Appeals instructed that a determination whether a bankruptcy petition has been filed in good faith is based upon the totality of circumstances:

> As the Seventh Circuit has noted, however, "good faith is a term incapable of precise definition." In re Love, 957 F.2d at 1355.  As a result, we believe that "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." Id.  We therefore join the Seventh, Ninth and Tenth Circuits in holding that the good faith of Chapter

9

> 13 filings must be assessed on a case-by-case basis in light of
> the totality of the circumstances. In re Love, 957 F.2d at
> 1355; In re Gier, 986 F.2d at 1329; In re Eisen, 14 F.3d at
> 470. Factors relevant to the totality of the circumstances
> inquiry may include, among others, the following: the nature
> of the debt . . . ; the timing of the petition; how the debt arose;
> the debtor's motive in filing the petition; how the debtor's
> actions affected creditors; the debtor's treatment of creditors
> both before and after the petition was filed; and whether the
> debtor has been forthcoming with the bankruptcy court and
> the creditors. In re Love, 957 F.2d at 1357.

Thus, the Third Circuit has held that a chapter 11 reorganization case was not filed in good faith when the debtor was capable of reorganizing, but the purpose of the bankruptcy filing was "to put pressure on antitrust plaintiffs to accept the company's settlement terms." In re SGL Carbon Corp., 200 F.3d 154, 167 (3d Cir. 1999). In In re Tamecki, 229 F.3d 205 (3d Cir. 2000), the Court of Appeals found that a chapter 7 liquidation bankruptcy case was filed in bad faith because the debtor had inexplicably incurred a large credit card obligation shortly before filing and was on the verge of obtaining the proceeds of property claimed as exempt in his bankruptcy case. And in In re Integrated Telecom Express, Inc., 384 F.3d 108 (3d Cir. 2004), the appellate court found a chapter 11 reorganization bankruptcy filing by a solvent company to be in bad faith when the purpose of the filing was to obtain the benefit of the statutory cap on a creditor's claim.

From these examples, it is clear that in determining whether the totality of the circumstances supports a finding of bad faith, courts have considered a myriad of factors. See generally In re SB Properties, Inc., 185 B.R. 198, 205 (E.D. Pa. 1995). Often included among these considerations is whether the bankruptcy petition was filed primarily to create a bankruptcy forum for what is essentially a two-party dispute that

10

could be resolved in a non-bankruptcy court. See, e.g., id. at 205; In re Fonke, 310 B.R. 809, 817 (Bankr. S.D. Tex. 2004); In re Herndon, 218 B.R. 821, 825 (Bankr. E.D. Va. 1998); see also In re Cornelius, 195 B.R. 831 (Bankr. N.D.N.Y. 1995):

> The focus of the Court's inquiry when dismissal pursuant to Code § 1307(c) is sought is on "whether the filing is fundamentally fair to creditors and whether it is fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." In re Klevorn, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995) (quoting Matter of Love, 957 F.2d 1350, 1357 (7th Cir. 1992)). It requires that the Court examine the totality of the circumstances on a case-by-case basis to determine whether the debtor has shown an honest intention in filing the petition. . . . The analysis includes consideration of such factors as (1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's conduct pre-petition was proper; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether the debtor's income is sufficient such that there is a likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute, and (9) whether the debtor filed solely to obtain the protection of the automatic stay.

Id., at 836 (citations omitted).

Accordingly, Chief Judge Sigmund, in In re Argus Group 1700, Inc., 206 B.R. 737, 753 (Bankr. E.D. Pa. 1996), noted that a bankruptcy reorganization case may properly be dismissed as in bad faith "where the bankruptcy petition was filed as a litigation tactic, a forum shopping device and/or to resolve what is essentially a two-party dispute." See also In re Mazzocone, 200 B.R. 568, 576 (E.D. Pa. 1996) (suspension of a bankruptcy case under section 305 was warranted "if the bankruptcy forum is indeed being used as a forum to resolve what is in essence a two-party dispute.").

11

In this instance, the proven facts demonstrate that this bankruptcy case was commenced in February 2006 simply to create a forum preferred by the debtor in order to litigate the validity of the September 2003 tax sale. She has no creditors. Until the validity of the tax sale is resolved, the debtor conceded at the hearing that no chapter 13 plan could be confirmed. Essentially, this bankruptcy case is no more than a dispute over the propriety of the September 2003 tax sale. And the debtor's challenge to that sale can be determined in state court, where the issue is already pending, even if the objection to the sale is based upon federal bankruptcy law. See generally Tafflin v. Levitt, 493 U.S. 455, 459 (1990) (there is a rebuttable presumption in favor of state courts having concurrent jurisdiction over federal claims); In re Baldwin-United Corporation Litigation, 765 F.2d 343, 347 (2d Cir. 1985) (The court in which the litigation claimed to be stayed is pending thus "has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."); Commonwealth, Dept. of Environmental Resources v. Ingram, 658 A.2d 435, 436 (Pa. Cmwlth. 1995) (Pennsylvania courts "possess[] concurrent jurisdiction to address the issues relating to [the bankruptcy] stay . . . .").[4]

---

[4]The Third Circuit Court of Appeals has held that only a bankruptcy judge can grant a party in interest relief from the automatic stay under section 362(d). See Constitution Bank v. Tubbs, 68 F.3d at 691 ("Relief from the stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case."); Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor."). Conversely, the Third Circuit has also held that a non-bankruptcy court forum may determine whether litigation pending before that forum is within the scope of the bankruptcy stay. Brock v. Morysville Body Works, Inc., 829 F.2d 383, 387 (3d Cir. 1987). Therefore, some disputes involving the bankruptcy stay are within the exclusive jurisdiction of the bankruptcy court, while concurrent jurisdiction exists for other disputes.

Courts have been divided in deciding whether damage claims for violation of the
(continued...)

If her challenge is rejected, the debtor apparently will have no creditors and no need for a chapter 13 reorganization. And if the challenge is upheld in state court and

---

⁴(...continued)
bankruptcy stay under section 362(h) fall within the bankruptcy court's exclusive or concurrent jurisdiction. Compare Halas v. Platek, 239 B.R. 784 (N.D. Ill. 1999) (bankruptcy court has exclusive jurisdiction), with Powell v. Washington Land Co., Inc., 684 A.2d 769 (D.C. 1996) (state court has concurrent jurisdiction over claim under section 362(h)).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8 (generally effective October 17, 2005), amended, inter alia, the bankruptcy jurisdictional statute: 28 U.S.C. § 1334. In relevant part, the statute now reads:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) *Except as provided in subsection (e)(2)*, and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
> ***
> (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--
>
> > (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and
> >
> > *(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.*

The italicized provisions, added in 2005, which expressly afford exclusive jurisdiction over disputes involving section 327 of the Bankruptcy Code, coupled with the rebuttable presumption in favor of state court concurrent jurisdiction, Tafflin v. Levitt, 493 U.S. 455, 459 (1990), now suggest that claims under section 362(h), raised after a bankruptcy case is dismissed, may be determined by a court of general jurisdiction, such as state court. See also Price v. Rochford, 947 F.2d 829 (7th Cir. 1991) (section 362(h) claim heard in district court after the bankruptcy case is dismissed). If so, then the debtor may also seek a state court determination of any claim she has against the Tax Claim Bureau for violation of the automatic stay.

the debtor needs to repay either the purchasers or the Tax Claim Bureau over time, then, if the debtor has sufficient financial resources to do so, a bankruptcy filing <u>at that time</u> may be in good faith.

        In other words, the debtor has known about the September 2003 tax sale since at least early 2004. This February 2006 bankruptcy filing is clearly a tactical maneuver to avoid litigating with the defendants in state court, where their ejectment action is now pending, since the debtor has no creditors and no need to reorganize at this time. The issues, evidence, and arguments regarding the propriety of the sale would be the same in both fora. Under all these circumstances, the better exercise of discretion under section 1307(c) is to dismiss this case and the debtor's recently filed adversary proceeding to allow the parties to proceed in state court to litigate their ownership claims.

        An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| ROSEMARIE T. WALKER | : | |
| Debtor | : | Bankruptcy No. 06-10494 |
| _____ | | |
| ROSEMARIE T. WALKER | : | |
| Plaintiff | : | |
| v. | : | |
| DELAWARE COUNTY TAX CLAIM BUREAU, THOMAS A. McFADDEN and ALBERT MARTIN | : : | |
| Defendants | : | Adversary No. 06-0135 |
| _____ | | |

............................................................

ORDER

............................................................

AND NOW, this 26th day of April 2006, for the reasons stated in the accompanying memorandum, it is hereby ordered that this case is dismissed pursuant to 11 U.S.C. § 1307(c), as not filed in good faith. It is further ordered that this court does not retain jurisdiction over the above-captioned adversary proceeding.

The clerk of court shall docket this order on both the main case and adversary dockets.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Ms. Rosemarie T. Walker
600 Springfield Road
Springfield, PA 19064

Scott F. Waterman, Esquire
Black, Stranick & Waterman, LLP
327 W. Front Street
Media, PA 19063

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
Law Office of David A. Scholl
6 St. Albans Avenue
Newtown Square, PA 19073